[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On November 17, 1992, a judgment of paternity was entered on both counts of the plaintiff's complaint finding the defendant to be the father of two minor children, Devon Dennis, born on January 20, 1980 and Karen Scott, born on August 6, 1981.
The case was continued to December 22, 1992, then to January 28, 1993 for a hearing concerning financial orders, past due support and orders concerning the two children's health expenses. On these dates, both parties appeared pro se. The interest of the State of Connecticut was represented by the Office of the Attorney General.
The plaintiff is seeking a weekly order for current support, the establishment of an amount owed her for past support in accordance with Conn. Gen. Stat. Sections 46b-160 and 46b-171, an order for weekly payment on that amount, and orders obligating the defendant to contribute to the health care expenses for the two children.
Since the plaintiff and the two children were recipients of Aid To Families with Dependent Children ("AFDC") benefits for a portion of the statutory period during which past support is being sought, the State is a party to this action and is CT Page 1193 requesting the establishment of its own arrearage for past support and weekly payment thereon.
Since February 26, 1989, the period commencing three years prior to the date of the filing of the plaintiff's petition, through January 31, 1993, 203 weeks have elapsed. During these 203 weeks, the plaintiff and her children received AFDC for 45 weeks. The statutes allow the plaintiff to claim past support for 158 weeks and the State to claim past support for 45. Conn. Gen. Stat. Sections 46b-160 and 171. During this period, the defendant contributed nothing toward the two children's support to either the plaintiff or the State.
The problem in determining an appropriate order for current support and in calculating arrearages based on ability to pay in this case is ascertaining the defendant's present and past income or earning capacity.
The defendant has not held salaried employment in years. He owns or partially owns three marginal properties in the inner city, 22 Liberty Street, 61-63 Lebanon Street and 161-163 Colebrook Street. He resides in a unit at the Lebanon Street property.
The defendant has insufficient equity in any of these properties to obtain further mortgages or credit and has attempted to sell some or all of them without success. He realizes little profit in owning and renting units in these properties; rather, he scrapes together enough each month to meet all the carrying costs. If all units he is entitled to lease were rented, (two are now vacant and one is occupied by an unemployed uncle as a favor to his mother), he would gross $3,328.00 in monthly rentals. He presently collects rents totaling $1,318.00 monthly, and monthly costs of maintaining the properties, including utilities and mortgage payments, exceed $2,500.00. The defendant testified that he does most maintenance work at the properties himself.
Income tax returns submitted by the defendant for 1989, 1990 and 1991 show significant losses from his real estate investments, resulting in little or no tax liability for those three years.
Ideally, if the defendant were able to keep all units fully occupied, collect market rents timely, and not encounter any CT Page 1194 large repair expenses, his profit, after paying utilities, taxes, mortgages and making arrangements to pay substantial liens on the Liberty Street property, could be over five hundred dollars a month. However, owning and managing property in the city is not functioning in an ideal world. An examination of rental income and hard expenses — taxes, mortgages, repairs and utilities — on his tax returns, (disregarding depreciation and tax advantages due to rental loss), shows little or no net profit derived from these ventures for the three-year period from 1989 to 1991. His testimony revealed that 1992 will probably not be much different. His best year, 1991, showed a profit of $2,833.00, or about $54.00 per week.
To supplement what little income he derives from the properties he owns, Mr. Scott testified that he gambles, picks up odd carpentry jobs and sells fish, fruits and vegetables from his car on weekends, weather permitting. He states he has held nothing but menial jobs, for pay averaging around $6.00 per hour, since 1984, when he was fired from a job with the State of Connecticut where he worked with computers earning "twelve or fourteen thousand a year."
He is angry about not being able to find good-paying work, attributing it to discrimination, and has actually given up the search for the past eight months. He has not held any salaried employment since prior to 1989.
When he sells fish and produce from his car on the streets, he can earn about $150.00 to $200.00 in a weekend. He had two carpentry jobs in 1992, earning about $1,000.00 total. He has reported gambling winnings of $643.00 on his 1991 tax return and $1,344.00 on his 1990 return. He also testified that he won $3,000.00 on a single bet in the past year.
If the defendant were to find a job, he has the ability to earn at least $6.00 an hour, as evidenced by his past several employments. This is a gross of about $240.00 weekly, and he would still pay little or no taxes due to his ongoing losses from his rental activities. Absent salaried employment, it is also apparent that he could supplement salaried income by gambling, selling fish and produce, or doing odd jobs — activities which generate as much as $175.00 average additional weekly income.
The defendant is articulate, intelligent and definitely not lacking in motivation or entrepreneurial skills. It seems fair to CT Page 1194-A conclude that he has a potential net earning capacity of at least $300.00 weekly.
The potential earning capacity of a party, or the ownership of substantial assets by one party are two of the designated deviation criteria. State of Connecticut, Commission for Child Support Guidelines, Final Report, December, 1990, pp. 809; Carey v. Carey, 8 CSCR 240, 241 (1992); Wright v. Warner, 5 S.M.D. 329, 334 (1991); Fretina v. Fretina, 5 S.M.D. 139, 142 (1991); Yochum v. Yochum, 6 S.M.D. 75, 81 (1992).
In appropriate circumstances, a court may consider a party's earning capacity rather than income actually earned in calculating orders of support. Johnson v. Johnson, 185 Conn. 573, 5765, 441 A.2d 578 (1981); Pascal v. Pascal, 2 Conn. App. 472,482, 481 A.2d 68 (1984); Paddock v. Paddock, 22 Conn. App. 367,371, 517 A.2d 1087 (1990); Andrews v. Andrews, 5 S.M.D. 216, 222 (1991).
The plaintiff works at two jobs in the medical field as a nurse's aid. Although the child, Devon, does not reside with her full time due to some problems he had when living in her apartment project, she pays his grandmother about $50.00 weekly to keep him at her house and allow him to attend school in Hartford. She also intends on having the boy move back home in the fall so he can start middle school in Manchester. She has a grown, employed daughter living with her as well as Karen Scott and several other minor children. Her net income is approximately $200.00 weekly, and her expenses, which are shared with the adult daughter, are $371.88 weekly.
Mr. Scott lives with a girlfriend and their three-year-old son. His girlfriend only works part-time and contributes about $50.00 per week to his household expenses, but she has secretarial skills and could work more hours, especially while he remain unemployed. He pays about $60.00 monthly support to his mother for her care of another of his children, a 16-year-old daughter. He is also paying the State $10.00 per week on an arrearage owed for a period of time when his 16-year-old was a recipient of AFDC benefits.
Rather than deducting what Mr. Scott pays for the support of his 16-year-old daughter, about $15.00 weekly, from his net earning capacity of $300.00, it would seem more equitable to preserve for his eldest minor child her rightful share of his CT Page 1194-B total support obligation for his four minor children. The child support guidelines would suggest a figure of $40.00 per child, or $80.00 payable to Ms. Campbell for Devon and Karen.
Based on this amount, the arrearage owed to Ms. Campbell as of January 31, 1993 for past support is found to be $12,640.00 and the arrearage for past support owed to the State is found to be $3,600.00, which is less than the full amount of maintenance paid to Ms. Campbell for Mr. Scott's two children over the past four years by the State.
Accordingly, effective February 5, 1993, Mr. Scott will pay $40.00 per week current support for each of the two minor children. He will also pay $5.00 per week on Ms. Campbell's arrearage and $5.00 per week on the State's arrearage, for a total weekly order of $90.00.
When the oldest child, Devon, attains the age of majority, the defendant will pay $25.00 per week on both the State and the plaintiff's arrearages, so the weekly order will remain at $90.00.
The weekly payments will be secured by an immediate wage withholding. The defendant must notify the State and the plaintiff of any changes in his source of income or the name and address of any employer. He must also provide the plaintiff and the State with a copy of his tax return each and every year. commencing with his tax return for 1992, for so long as he is obligated to make support or arrearage payments to them.
The parties are also ordered to maintain medical and/or dental health insurance coverage for the benefit of the two minor children if available to them through their respective places of employment, unions, or other available plans at a reasonable cost, incorporating the provisions of Conn. Gen. Stat. Section46b-84(c). The parties will also share equally, 50-50, the cost of any necessary unreimbursed and uninsured medical and dental expenses for the two minor children. The parties must both notify each another and the Office of Child Support when insurance is available, verify the cost and provide policy information.
Payments will be made through the Bureau of Collections for the benefit of the State or the plaintiff, Norma Campbell, as their interests appear.
CHRISTINE E. KELLER FAMILY SUPPORT MAGISTRATE CT Page 1195